UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
|---|---|---|---|
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT EQUITY LIFESTYLE PROPERTIES, INC.'S MOTION FOR SUMMARY JUDGMENT (DKT. 23);**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 32)**

I.      **Introduction**

On September 28, 2020, Chris Langer ("Plaintiff") brought this action against Equity Lifestyle Properties, Inc. ("Defendant") and Does 1-10. Dkt. 1-1. On December 3, 2020, Plaintiff filed a First Amended Complaint ("FAC"), which is the operative one. Dkt. 13. It alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and the Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code. §§ 51-53. *Id.*

On September 23, 2021, Defendant filed a motion for summary judgment. Dkt. 23 ("Defendant's MSJ"). On October 14, 2021, Plaintiff filed an opposition. Dkt. 26. On October 28, 2021, Defendant filed a reply. Dkt. 28.

On January 21, 2022, Plaintiff filed a motion for summary judgment. Dkt. 32 ("Plaintiff's MSJ"). On February 11, 2022, Defendant filed an opposition. Dkt. 33. On February 24, 2022, Plaintiff filed a reply. Dkt. 35.

Based on a review of the matters presented by the Motion, and pursuant to L.R. 7-15, a determination was made that the Motion may be decided without oral argument. Dkt. 39. For the reasons stated in this Order, Defendant's MSJ is **GRANTED**. Plaintiff's MSJ is **DENIED**.

II.     **Factual Background**

     A.      The Parties

It is alleged that Plaintiff is a California resident with physical disabilities. FAC ¶ 1. He allegedly has Delayed Endolymphatic Hydrops, which has caused his permanent, partial hearing loss. *Id.* ¶¶ 1, 10-11. It is alleged that Plaintiff relies on subtitles and closed captioning to be able to review the content of recorded audio. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

Defendant owns and operates membership campgrounds and RV parks in California, including the Thousand Trails campgrounds. FAC ¶ 3; Dkt. 23-1 at 14. The campgrounds are used for recreation and are a place of public accommodation. *See* 42 U.S.C. § 12181(7)(I). Defendant also owns and operates the website https://www.thousandtrails.com (the "Website"). Dkt. 32-2 ("Pl.'s SUF") ¶ 1.

      B.      Plaintiff's Visit to Defendant's Website

The FAC alleges that, in September 2020, Plaintiff visited the Website to look for information about the camping grounds and other facilities operated by Defendant. FAC ¶ 15. It is alleged that Plaintiff attempted, but was unable, to view video content on the Website because that content did not have closed captioning. *Id.* ¶ 16. Specifically, it is alleged that Plaintiff experienced difficulty in attempting to watch two videos -- "Membership info" and "Watch Their Story." *Id.* ¶ 17.

It is alleged that Plaintiff has been deterred from returning to the Website as a result of this experience. *Id.* ¶ 26. It is further alleged that Plaintiff is a "tester in this litigation" who "seeks future compliance with all federal and state laws," and that Plaintiff "will return to the Website to avail himself of its goods and/or services and to determine compliance with the disability access laws once it is represented to him that [the Website is] accessible." *Id.* ¶ 25.

      C.      Defendant's Subsequent Alterations to the Website

Dan Perlis, Senior Vice President of Defendant, declares that all the videos on the Website, including the two videos identified in the FAC, have now been captioned. Dkt. 23-3 ¶¶ 2, 4. In support of the Perlis Declaration, Defendant has submitted copies of the two videos identified by Plaintiff, which now contain captions. Dkts. 23-5, 23-6.

Perlis also declares that Defendant "has adopted a policy of captioning all videos on its websites and any new videos added to the website." Dkt. 23-3 ¶ 5. Perlis declares that Defendant has not received any other complaints about the lack of closed captioning in the videos on the Website. *Id.* ¶ 3. Defendant asserts that as a result of these actions, the violations alleged by Plaintiff have been remedied.

**III.**      <u>**Analysis**</u>

      A.      Legal Standards

            1.      <u>Summary Judgment</u>

A motion for summary judgment will be granted where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322. Where the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Where the nonmoving party will have the burden of proof on an issue, however, the movant need only demonstrate that there is an absence of evidence to support the claims of the nonmoving party. *See id.* If the moving party meets its initial burden, the nonmoving party must set forth "specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 324).

Only admissible evidence may be considered in connection with a motion for summary judgment. Fed. R. Civ. P. 56(c). However, in considering such a motion, a court is not to make any credibility determinations or weigh conflicting evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). All inferences are to be drawn in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). However, conclusory, speculative testimony in declarations or other evidentiary materials is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

       2.    <u>The ADA</u>

Title III of the ADA prohibits discrimination at places of public accommodation. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a claim of ADA discrimination, a plaintiff must show that: "(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

Facilities that are available to the public that were constructed after January 26, 1993, must be "readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements" set forth in the ADA Accessibility Guidelines. 42 U.S.C. § 12183(a)(1). The ADA Accessibility Guidelines, which were "[p]romulgated by the Attorney General to 'carry out the provisions' of the ADA, . . . 'lay out the technical structural requirements of places of public accommodation.'" *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004)).

The Department of Justice has also adopted regulations that require a place of public accommodation to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1); 75 Fed. Reg. 43460-01, 43464 (July 26, 2010). "Auxiliary aids and services" are defined to include "closed caption decoders; open and closed captioning, including real-time captioning; ... or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303(b)(1). "The DOJ has repeatedly affirmed that [the ADA] applies to websites that meet the definition of a public accommodation." *Gorecki v. Hobby Lobby Stores, Inc.*, No. CV 17-1131-JFW(SKX), 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

The Ninth Circuit has held that this requirement applies to the website of a place of public accommodation if there is a sufficient "nexus" between the website and the goods and services of the physical location. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019). For example, "the ADA applies to [a defendant's] website and [mobile] app, which connect customers to the goods and services of [the defendant's] physical restaurants" because they are the "primary . . . means of ordering [the defendant's] products to be picked up at or delivered from [the defendant's] restaurants." *Id.* at 905-06 (9th Cir. 2019); *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113-14 (9th Cir. 2000) (because the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services," there must be "some connection between the good or service complained of and an actual physical place").

"Damages are not recoverable under Title III of the ADA -- only injunctive relief is available for violations of Title III." *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir. 2002).

### 3. Mootness

"Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) (internal citations omitted); *see also Johnson v. Cal. Welding Supply, Inc.*, No. CIV. 2:11-01669 WBS (GGHx), 2011 WL 5118599, at *3 (E.D. Cal. Oct. 27, 2011) ("Once a defendant has remedied all ADA violations complained of by a plaintiff, the plaintiff's claims become moot and he or she loses standing, meaning the court no longer has subject matter jurisdiction over the ADA claims.") (citing *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2005)).

"[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 190 (2000); *see also Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992) ("Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.").

Structural changes often result in causing ADA claims to become moot because they are considered permanent changes, with any future reversion unlikely. *See e.g., Ramirez v. Golden Creme Donuts*, No. C 12-05656 LB, 2013 WL 6056660, at *2 (N.D. Cal. Nov. 15, 2013) ("[S]tructural improvements are less likely altered. For this reason, courts readily conclude that successful remedial efforts moot ADA claims.") (citing *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997)). "When considering non-structural features, courts have found that voluntary remediation of violations do not moot an issue because the violations could easily reoccur. To determine if the facts indicate a danger of future violations, courts consider the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Johnson v. Holden*, No. 5:18-CV-01624-EJD, 2020 WL 1288404, at *4 (N.D. Cal. Mar. 18, 2020) (internal quotations and citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

      B.      Application

              1.      <u>Whether Plaintiff's Claims are Moot</u>

In support of Defendant's MSJ, it argues that Plaintiff's claims are moot because, shortly after this action was filed, Defendant added closed captioning to all the videos on the Website, including the two videos identified in the FAC. Furthermore, Defendant claims to have adopted a new "policy of captioning all videos on its websites and any new videos added to the website." Dkt. 23-3 (Perlis Decl.) ¶ 5. Plaintiff does not dispute either that closed captioning has been added to the videos on the Website or that Defendant has adopted this policy on an ongoing basis. Instead, he argues that his claims are not moot because changes to a website or website policy are not permanent, and violations could recur.

Courts have reached differing conclusions as to whether a policy change regarding closed captioning to website videos can cause an ADA claim to become moot. *Compare Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-CV-06015-DMR, 2021 WL 148237 (N.D. Cal. Jan. 15, 2021) (newly compliant website did not moot ADA claim) *and Langer v. Neils Motor Homes, Inc.*, No. CV 20-10233-DMG (EX), 2021 WL 3184544, at *2 (C.D. Cal. Apr. 28, 2021) (removal of one non-compliant video did not moot ADA claim) *with Langer v. Guest*, No. 221CV02716ODWPLAX, 2021 WL 4974039 (C.D. Cal. Oct. 26, 2021) (adding closed captioning to video sufficient to moot ADA claim). Unlike structural changes to construction-related barriers, a defendant could easily revert to a non-compliant website, including by continuing to upload non-compliant videos or by failing to implement sufficient safeguards against future violations. Thus, courts must assess whether the evidence "make[s] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 170.

In *Langer v. Guest*, the evidence demonstrated that defendant's failure to add closed captioning to a video on its website was due to "inadvertence or excusable neglect." 2021 WL 4974039 at *3. The video had included a closed captioning feature that was temporarily deactivated because "the coding became corrupted." *Id.* Thus, the defendant had implemented a compliant closed captioning policy prior to the commencement of the action, but it was not functioning properly. Under these circumstances, the court held that there was sufficient evidence that the violation would not recur. *Id.*

No comparable evidence is presented here. Defendant only implemented a closed captioning policy after this lawsuit was filed. Defendant argues that, because it immediately addressed the closed captioning issue after learning about it, and because it has not received any further complaints about the lack of closed captioning since its adoption of the new policy, future violations are not likely to recur. Moreover, because the videos are already captioned, "there would be no reasonable motivation" to incur extra costs to remove the captioning. Dkt. 23-1 at 18. However, this evidence is insufficient to establish that, for example, Defendant would not upload future videos without closed captioning. Defendant has not provided any evidence as to how its new policy will ensure that future videos will be fully compliant.

Based on these considerations, Defendant has not met its "heavy burden of proving that the challenged conduct cannot reasonably be expected to recur." *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir. 2000). Instead, this presents a triable issue of fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
|---|---|---|---|
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

    2.    <u>Plaintiff's ADA Claim</u>

Plaintiff argues that there is no genuine factual dispute as to whether the Website violated the ADA. Defendant argues that Plaintiff's ADA claim fails because there is not a sufficient nexus between the Website and a place of public accommodation. Specifically, Defendant argues that Plaintiff does not demonstrate that he was denied access to a physical location due to the alleged inaccessibility of the Website.

Plaintiff declares that he visited the Website because he was "interested in visiting one of the Defendant's campgrounds in California and wanted to confirm which ones were open." Dkt. 26-2 ¶ 6. Plaintiff further declares that he "wanted to look for information about the facilities and amenities offered at the different campgrounds" so he could choose one to visit. *Id.* ¶ 6. Plaintiff next declares he is "still interested in visiting one of Thousand Trail's campgrounds in California" and that he intends to visit the Website again once it is compliant in order to "get information about the Camping Pass and book a visit to one or more of the campgrounds." *Id.* ¶ 12.

Plaintiff has not proffered any evidence as to how the alleged violations on the Website have a nexus with Defendant's physical locations. Plaintiff does not explain how the specific videos he encountered limited his ability to obtain the information he sought in order to visit Defendant's campgrounds. The two specific non-compliant videos identified in the FAC include a promotional video featuring a family's personal experience at Defendant's RV parks, and a video regarding the membership pass that is available for purchase. *See* Dkt. 23-3 ¶ 2 (Perlis Decl.); Dkts. 23-5, 23-6 (copies of videos); Dkt. 26-2 ¶¶ 7-9 (Langer Decl.). Neither of the videos includes information about the specific availability of campgrounds or instructions for visiting any of them. Only the membership pass video includes some information pertinent to the accessibility of Defendant's campgrounds, by providing a general introduction to the benefits of membership and campground locations. *See* Dkt. 23-6; Dkt. 33-1 ¶ 2 (Perlis Decl.). However, a membership pass is not required to access the campgrounds. *See* Dkt. No. 26-4 at 38, 64, 78, 94.

Other evidence proffered by Plaintiff demonstrates that other pages on the Website, that were accessible to him by reading them, provide information regarding facilities, amenities, availability of campgrounds, and links for making reservations. *See* Dkt. 26-4 (screenshots of webpages describing facilities and amenities and instructions for making reservations). Moreover, the information provided in the membership pass video that could reasonably linked to a campground is also provided in writing on the Website. The Membership Information webpage on which the video is featured also includes details regarding the price and benefits of the membership pass, a list of specific locations, an online chat feature and phone number, and a link to register. *Id.* at 2-9 (screenshots of the Membership Information webpage). In sum, the webpage includes all of the information presented in the video, and more.

For these reasons, the undisputed evidence demonstrates that there is a nexus between the Website and Defendant's physical campgrounds because the Website provides information regarding the accessibility and locations of the campgrounds. However, the undisputed evidence also demonstrates that such information is available on the Website in a format that can be read by the Plaintiff. Plaintiff has not presented any evidence that he could not do so. Plaintiff's broad conclusory allegations that the non-compliant videos deterred him from accessing Defendant's physical locations are insufficient. *See,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
|---|---|---|---|
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

*e.g.*, *Strojnik v. SCG Am. Constr. Inc.*, No. SACV191560JVSJDE, 2020 WL 4258814, at *4 (C.D. Cal. Apr. 19, 2020) (plaintiff "cannot rely solely on conclusory allegations, but rather must state what information is missing [from the website] that would prevent him from staying at [defendant's property]").

Plaintiff does not dispute that the information on the Website regarding access to Defendant's campground was accessible to him. Instead, Plaintiff argues that the "videos themselves are a distinct privilege, service and advantage." Dkt. 26 at 16. Plaintiff adds that, "having the option of viewing a video (a more creative and often more lively presentation of information), rather than having to read through different places on the Website to find the information, is a distinct advantage" that Plaintiff could not fully and equally enjoy. *Id.*

Plaintiff's argument is unconvincing. An inaccessible website constitutes a violation of the ADA only insofar as it "impedes access to the goods and services of" a defendant's "physical" location. *Robles*, 913 F.3d at 905; *see also Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-CV-06015-DMR, 2021 WL 148237, at *6 (N.D. Cal. Jan. 15, 2021) ("[W]ebsites (and the services offered on them) are not public accommodations absent a nexus to a physical location."). In *Robles*, the visually impaired plaintiff could not order pizza from the defendant's website and app because they were incompatible with the plaintiff's screen-reading software. *Id.* at 902. Thus, that inaccessibility impeded plaintiff from accessing the goods and services that defendant offered. *See id.* at 904-06. Similarly, in *Farr v. Hobby Lobby Stores, Inc.*, the legally blind plaintiff sufficiently alleged an ADA violation where he was "unable to use and access the website and was unable to locate a physical Hobby Lobby store" due to the website's incompatibility with screen-reading software. No. CV 19-5949-DMG (ASX), 2020 WL 3978078, at *2 (C.D. Cal. Apr. 29, 2020). As these and similar cases make clear, inaccessibility of a website constitutes a violation of the ADA if it impedes a plaintiff's access to a physical place of public accommodation.

As discussed above, the evidence in the record establishes that the inaccessibility of the videos on the Website did not prevent Plaintiff from obtaining information regarding the location and availability of Defendant's campgrounds, nor did it impede Plaintiff's ability to make a reservation online through the Website. Therefore, there is no genuine factual dispute that Plaintiff was not deterred from accessing the campgrounds due to the lack of closed-captioned videos. Without a nexus to Defendant's place of public accommodation, the lack of closed-captioned videos does not constitute a violation of the ADA.

For the foregoing reasons, Defendant's MSJ is **GRANTED** as to Plaintiff's ADA claim.

        3.    <u>Plaintiff's Unruh Act Claim</u>

The Unruh Act provides that the "violation of the right of any individual under the [ADA] shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Plaintiff's Unruh Act claim is premised on his ADA claim. *See* FAC at 7-8. For the same reasons that Plaintiff's ADA claim fails, Defendant's MSJ is **GRANTED** as to Plaintiff's Unruh Act claim.

**IV.**    <u>Conclusion</u>

For the reasons stated in this Memorandum, Defendant's MSJ is **GRANTED**. Plaintiff's MSJ is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-10165 JAK (SKx) | Date | July 6, 2023 |
| Title | Chris Langer v. Equity Lifestyle Properties, Inc. et al. | | |

**DENIED**. Within ten days of the issuance of this Order, following a meet and confer process between the parties, Defendant shall lodge a proposed judgment that is consistent with this Order. If Plaintiff has agreed to the form, not the substance, of the proposed judgment, that shall be stated on the proposed judgment, and confirmed by a signature by Plaintiff's counsel. If Plaintiff does not agree with the form of the proposed judgment, Plaintiff shall timely file any objection in accordance with the Local Rules.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    tj